IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CHESTER COUNTY AVIATION HOLDINGS, INC., Plaintiff, v. CHESTER COUNTY AVIATION AUTHORITY, et al., Defendants. | CIVIL ACTION<br><br>NO. 12-3656 |

## OPINION

**Restrepo, J.**                                                                                   August 26, 2013

## I.      INTRODUCTION

This action arises out of a contract between Chester County Aviation Holdings

("CCAH"), a fixed-base operator ("FBO")[1], and Chester County Aviation Authority (the

"Aviation Authority" or "Authority"), a municipal agency under Chester County, Pennsylvania.

The contract permitted CCAH to provide various services in connection with the day-to-day

operations of G.O. Carlson Airport (the "Airport"), an airport owned by Chester County and

located in Coatesville.  In exchange for retaining the revenue brought in by the Airport, CCAH

was to make regular rent payments to the Aviation Authority and provide maintenance to the

Airport.  See Compl. (Doc. 1) ¶¶ 9, 14, 24.

The relationship between CCAH and the Authority recently soured, and on June 28,

2012, CCAH commenced this action against the Authority and its Chairman, Albert Koenig.  By

_____

[1] According to the Federal Aviation Administration, an FBO is "a commercial business granted
the right by the airport sponsor to operate on an airport and provide aeronautical services such as
fueling, hangaring, tie-down and parking, aircraft rental, aircraft maintenance, flight instruction,
etc."  Compl. ¶ 18.

way of 42 U.S.C. § 1983, Plaintiff alleges that the Authority violated its substantive and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution (Counts I and II). Id. at ¶¶ 75-87. Plaintiff also alleges breach of contract by the Authority (Count III) and tortious interference with contract by Chairman Koenig (Count IV) as pendent state law claims. Id. at ¶¶ 88-99.

Presently before the Court is Defendants' Motion to Dismiss the Complaint. For the reasons set forth below, Defendants' motion will be **GRANTED**.

## II. FACTUAL BACKGROUND

On November 23, 2005, Plaintiff CCAH and its affiliate, JetDirect Aviation, LLC, entered into a Fixed Base Operation Lease and Operating Agreement (the "Lease") with Defendant Aviation Authority for a term of twenty-five years. Id. at ¶¶ 21-23. Pursuant to the terms of the Lease, Plaintiff was permitted to provide "fuel sales, fuel delivery, aircraft sales, aircraft storage and tie downs, line service and pilot/passenger services and facilities, aircraft rental and aircraft charter service" at the Airport and retain the revenue from these services; in exchange, Plaintiff agreed to make fixed rent payments to the Authority and pay an additional rent of three (3) percent of the gross revenue brought in at the Airport. Id. at ¶¶ 24, 26.

According to Plaintiff, the economic downturn detrimentally affected its business at the Airport due, at least in part, to a drop in fuel sales. By 2010, Plaintiff was unable to make its rent payments and meet its maintenance obligations under the Lease. See Doc. No. 15 at 6. In an effort to accommodate Plaintiff's financial difficulties, the Authority agreed to amend the Lease (hereinafter "First Amendment to the Lease") to memorialize a $13,760 loan from Defendant to Plaintiff, adjust Plaintiff's rent payments between August 2010 and January 2011, and postpone some of Plaintiff's maintenance obligations. Compl. ¶ 32.

However, the Amendment did not alleviate Plaintiff's economic difficulties, and Plaintiff now alleges that the Aviation Authority played a role in its continued loss of profitability. Specifically, Plaintiff claims that the Authority violated a non-compete covenant in the Lease by allowing Global Air, a fuel supplier to various aviation operations and therefore a direct competitor to Plaintiff, to provide fuel at the Airport.  Compl. ¶¶ 27, 35, 38; Lease (Doc. No. 13) § 4.2.  Importantly, while Global Air had been supplying fuel at the Airport since 1999 – more than five years prior to execution of the Lease at issue in this matter – Plaintiff only complained to the Aviation Authority for the first time in April 2011.  Compl. ¶ 38.  Plaintiff alleges that the Aviation Authority agreed to investigate its claim of unfair competition but ultimately never responded to its concerns, although Plaintiff suggests that the Authority may have discussed the issue in a closed executive session during its May 2011 monthly meeting.  Id. at ¶¶ 41-42.  According to the Complaint, the Aviation Authority continues to allow Global Air to provide fuel at the Airport to date.  Id.

Plaintiff next alleges that the Aviation Authority refused to cooperate with Plaintiff's efforts to improve its business performance at the Airport.  In May or June 2011, Plaintiff retained FBO Solutions Group ("FSG") to develop a marketing campaign to attract new tenants to the Airport and increase fuel sales.  Id. at ¶ 43.  FSG proposed a joint marketing campaign involving Plaintiff, the Aviation Authority, and other stakeholders.  Id.  While the Authority considered the matter at its June and August 2011 monthly meetings, it ultimately decided to not participate in the marketing scheme.  Id. at ¶¶ 44-46.  Plaintiff contends that this was a purposeful attempt by the Aviation Authority to "hamper Plaintiff's business."  Id. at ¶ 78.

When it later became clear that business at the Airport was not improving, Plaintiff attempted to sell its business and assign its rights under the Lease to a third party.  The Lease

requires Plaintiff to obtain the Authority's written consent prior to assigning its leasehold interests; in turn, the Authority cannot unreasonably withhold consent to a proposed assignment. Id. at ¶ 28; Lease at § 14.1 ("Neither the whole nor any part of this Agreement nor the leased premises may be assigned, transferred, or sublet by Operator, either by process or operation of law, or in any other manner whatsoever without the prior written consent of Authority. Said consent shall not be unreasonably withheld."). The crux of Plaintiff's Complaint involves two occasions where it alleges that the Authority unreasonably prevented assignments proposed by Plaintiff.

The first instance involved Galaxy FBO ("Galaxy"), an FBO who allegedly approached Plaintiff in August 2011 about the possibility of purchasing the assignment for approximately $5.6 million. Compl. ¶ 48. Galaxy, on its own volition, decided to withdraw its offer sometime after meeting with Aviation Authority representatives, allegedly due to concerns that the Authority was disregarding its obligations under the Lease with Plaintiff and "intentionally hampering [Plaintiff's] ability to effectively run an FBO operation." Id. at ¶ 51. Here, again, Plaintiff alleges that any discussion by the Authority of Galaxy's proposal was conducted in closed execution sessions rather than in those portions of Aviation Authority's meeting open to the public. Id. at ¶ 52.

The second instance allegedly occurred a few months later, when Plaintiff was approached by another FBO, Airport Property Partners LLC ("APP"), about the possibility of purchasing its business at the Airport. Id. at ¶ 53. Without first obtaining the Authority's written consent to the assignment, Plaintiff entered into an agreement with APP's local operating entity, Chester County FBO LLC, for the sale of Plaintiff's business and assignment of its interest under the Lease for a purchase price of roughly $5.3 million. Id. at ¶ 54. Only after the

execution of this agreement did APP approach the Authority to obtain its consent to the assignment. Id. at ¶ 55. At that time, the Authority advised that it would not approve the assignment unless APP agreed to certain material changes in the Lease. Id. Specifically, Plaintiff alleges that the Airport Authority required APP to agree to increased maintenance obligations and provide both a corporate guarantee and a personal guarantee from its principal. Id. at ¶ 59. Plaintiff suggests these demands were unreasonable given APP's "financial wherewithal, financial stability, [and] well-established experience and record as an FBO operator." Id. at ¶ 56. Plaintiff alleges that the Aviation's position regarding the APP assignment was "motivated by bias, bad faith, or partisan or personal motives unrelated to the merits," as shown by a January 10, 2012 email from the Authority's attorney to APP's attorney indicating that the Authority's ultimate objective was to end the tenancy relationship and take over the FBO services at the Airport itself. Id. at ¶¶ 56-57. That email reads:

> I should add here as an FYI, we have a contingent of Authority members who would rather the Authority take over the FBO operation on behalf of the County. Also, early in your and my conversation the guarantee was raised by me because it has heretofore been a consistent position of the Authority. Unfortunately, therefore, the "improved situation" argument doesn't resonate well with the Authority inasmuch as it holds as an alternative to the present situation (and has been discussed for the period since the rent rebate was requested by the current FBO), the belief it would be in a superior position if it simply took over the operation from the outset. I am reasonably certain it will want a guarantee of the obligations with an entity that actually had assets/financial viability now as a condition of assignment under the circumstances, especially with a $5.7 million dollar bond attached to it.

Id. At a meeting later that day, the Authority allegedly discussed APP's offer during a closed executive session. Id. at ¶ 58.

According to the Complaint, APP agreed to provide a corporate guarantee and to take on certain maintenance obligations at the Airport for a period of eighteen months.

Id. at ¶ 60.  However, APP's principal refused to provide a personal guarantee, at least initially.  Id.  In lieu of the personal guarantee, APP provided data regarding its revenue to debt ratio at its other operation sites, which purportedly showed that the Authority's "concerns about APP's financial health and ability to operate the FBO were misplaced." Id. at ¶ 62.  Plaintiff alleges that the Authority discussed APP's counter-proposal in a closed executive session during its February 2012 meeting, but never formally responded to it.  Id. at ¶¶ 63-64.

By email dated March 26, 2012, Thom Harrow, APP's principal, reengaged with the Aviation Authority regarding the assignment of the lease.  See Doc. No. 26 at 21. This time, Harrow agreed to provide a personal guarantee for APP's fixed rental obligations for a period of five years and to undertake the additional maintenance obligations that the Authority had earlier insisted upon.  Id.  The Authority responded to Harrow explaining that financials were only one of several concerns it has regarding the proposed transaction between Plaintiff and APP.  Id. at 20.  The Complaint does not state the final disposition of APP's offer but seems to sugggest that APP stopped pursuing its purchase of Plaintiff's business.  Id.

Plaintiff's financial condition did not improve during this time, and on February 16, 2012, the Authority sent a letter to Plaintiff informing Plaintiff that it was in default of certain terms set forth in the First Amendment to the Lease.  Id. at ¶ 65.  Shortly after, the Authority contacted Plaintiff and expressed an interest in purchasing its FBO business at the Airport.  Id. at ¶ 66.  Plaintiff subsequently gave the Aviation Authority permission to inspect its financial records.  Id. at ¶ 67.  In a letter dated April 12, 2012, the Aviation Authority offered to purchase Plaintiff's FBO operation for $3.2 million, an

amount which Plaintiff complains is "substantially less than fair market value" given that APP and Galaxy had offered almost $2 million more only months earlier. Id. at ¶¶ 69-71. Further, the amount was just enough to cover Plaintiff's debt and its property interest under the Lease at the time. Id. Plaintiff rejected this offer. Id.[2]

### III. PROCEDURAL BACKGROUND

On June 28, 2012, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. It pleads four separate counts, alleging that the Aviation Authority abused its power and deprived Plaintiff "of its significant property interests embodied in the Lease, and has cornered Plaintiff into having two options – sell its business to the Aviation Authority at far below market rate, or fight to stay alive over the next decades to use and enjoy its remaining property interests (without the material right to divest or assign to an otherwise reasonable assignee) in a hostile landlord-tenant environment." Compl. ¶ 73.

In Counts I and II, respectively, Plaintiff alleges that the Aviation Authority violated its right to substantive and procedural due process under the Fourteenth Amendment to the United States Constitution by impairing Plaintiff's effort to assign its interests under the Lease and discussing matters in connection with the Lease in closed executive sessions. Id. at ¶¶ 75-87. In Count III, Plaintiff alleges that the Aviation Authority breached the Lease by unreasonably withholding its consent to two assignments. Id. at ¶¶ 88-92. And finally, in Count IV, Plaintiff alleges that the Authority's Chairman Albert Koenig tortiously interfered with Plaintiff's ability to assign

---

[2]     There is no indication in Plaintiff's Complaint, or in any of its responsive papers to this Motion to Dismiss, that the Aviation Authority has actually terminated Plaintiff's leasehold or barred Plaintiff from providing FBO services at the Airport.

its Lease, with the goal of forcing Plaintiff to sell its interests under the Lease to the Airport Authority for $2 million less than market value. Id. at ¶ 93-99.

On September 28, 2012, Defendants Aviation Authority and Albert Koenig filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure . See Doc. No. 13. Plaintiff filed a response on October 24, 2012, and Defendants filed a reply on October 31, 2012. See Doc. Nos. 15 and 16.

On November 26, 2012, a hearing was held before the Honorable Joel H. Slomsky, who ordered the parties to file supplemental briefs. Accordingly, Plaintiff filed its Opposition to the Motion to Dismiss on January 1, 2013, and Defendants filed their Response on January 11, 2013. See Doc. Nos. 21 and 22.

On April 26, 2013, Plaintiff moved to file a sur-reply to introduce documents that it had recently received from Defendants. See Doc. No. 23. The motion was granted, and Plaintiff filed its sur-reply on April 29, 2013. See Doc. Nos. 24-25. Defendants filed their response to Plaintiff's sur-reply on May 10, 2013. See Doc. No. 27.

## IV.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., 237 F.3d 270, 272 (3d Cir. 2001).

Rule 8(a) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a

motion to dismiss.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997);

see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Instead, "[f]actual allegations [in a

complaint] must be enough to raise a right to relief above the speculative level."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must include "enough facts to state a

claim to relief that is plausible on its face."  Id. at 570.  Although the Federal Rules

impose no probability requirement at the pleading stage, a plaintiff must present "enough

facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element[s]" of a cause of action.  Phillips v. Cnty. of Allegheny, 515 F.3d 224,

234 (3d Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556

U.S. at 679 (emphasis added).  The "plausibility" determination is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common

sense."  Id.

## V.     ANALYSIS

### A.     The Lease's Forum Selection Clause Requires That This Action Be Filed in a Pennsylvania Court of Common Pleas.

As a preliminary matter, Defendants point to the Lease's forum selection clause as grounds for dismissal of the Complaint.  See Doc. 13 at 7 (hereinafter "Lease").  The Lease states that "[t]he venue for the trial of any civil action pertaining to this Agreement shall be [in] Chester County, Pennsylvania."  Lease § 23.5.  It also provides that "[t]his Agreement is to be construed in accordance with the laws of the Commonwealth of Pennsylvania."  Lease § 23.4. Plaintiff contends that this District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, since its substantive due process claim is grounded in the U.S. Constitution and federal law, making the forum selection clause inapplicable.  See Doc. 15 at 23.  Plaintiff further argues that the phrase, "pertaining to this Agreement," is ambiguous and that CCAH's conduct at issue, its purported efforts to "steal" Plaintiff's business, does not relate to the Lease and is therefore outside of the scope of the forum selection clause.  Id. at 22-23.

Forum selection clauses are generally enforceable absent a strong showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  M/S Bremen v. Zapata Off-Shore Co. (The Bremen), 92 S. Ct. 1907, 1916 (1972); see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1987).  The Bremen standard for evaluating a forum selection clause in a contract applies even when the district court is exercising federal question jurisdiction.  See In re Diaz Contracting Inc., 817 F. 2d 1047, 1050 (3d Cir. 1987) (referencing Envirolite Enter. v. Glastechnische Indus. Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007 (S.D.N.Y. 1985), aff'd, 788 F.2d 5 (2d Cir. 1986)).  Thus, the determination of whether the forum selection cause in the instant action should be enforced will be made in accordance with this standard.[3]

Here, enforcement of the forum selection clause is not unjust or unreasonable, because the language of the provision makes clear that the parties intended to establish Chester County, Pennsylvania, as the sole location for litigation of disputes. The clause provides that "venue for any civil action pertaining to this Agreement shall be in Chester County"; it does not differentiate between federal and state law claims. Lease § 23.5. Moreover, courts in the Third Circuit have enforced forum selection clauses with very similiar language. See Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 86 (3d Cir. 2006) (finding that the clause, "[t]his Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania . . . admits of no other result than that the courts of Butler County are the exclusive forum in which the parties may obtain adjudication under their contract"); see also Relm Wireless Corp. v. C.P. Allstar Corp., 265 F.Supp.2d 523, 524 (E.D.Pa. 2003) (holding that, while a venue selection clause stating that "[t]his Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania with venue in Chester County . . . does not, on its face, mandate that suit be brought in a state court," it would "trifle[ ] with language to describe a lawsuit" filed in district court in Philadelphia as having venue in Chester County).

---

[3]The Lease's choice of laws clause states that it "is to be construed in accordance with the laws of the Commonwealth of Pennsylvania." § 23.4. However, district courts use federal law when determining the effect of forum selection clauses because "'[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature.'" Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) (quoting Jones v. Weibrecht, 901 F.2d 17 (2d Cir. 1990)). Regardless, the employment of the Bremen standard would not be altered by the application of Pennsylvania law, because Pennsylvania also follows that standard. See, e.g., Patriot Commercial Leasing Co., Inc. v. Kremer Rest. Enterprises, LLC, 915 A.2d 647, 650-51 (Pa. Super. Ct. 2006).

Plaintiff's argument about the ambiguity of the phrase "pertaining to this Argreement" is also without merit. While Plaintiff alleges that its due process claims do not pertain or relate to the Lease, these claims concern an alleged "hostile landlord-tenant environment" that would not exist but for the parties' contractual relationship. See Compl. ¶ 73. Further, the property interests of which Plaintiff complains it is being deprived, namely its ability to run a profitable FBO operation at the Airport and assign its property interest at the Airport to a third party, are contractually-created interests that also would not exist if not for the Lease. Because the entire relationship between the parties to this matter is rooted in the Lease and the parties would not otherwise be conducting business dealings, this Court finds that Plaintiff's due process claims in Counts I and II do "pertain to the Agreement."

Plaintiff has not claimed that it would be unreasonable or unjust to try this matter in a Pennsylvania court of common pleas venued in Chester County. Litigation in that forum would not be unduly burdensome to Plaintiff, as Plaintiff conducts daily business at the Airport located within Chester County. While this Court appreciates that Plaintiff might prefer to litigate this matter in a federal court outside of Chester County since it is suing a municipal entity of the County, Pennsylvania's courts of common pleas regularly hear suits against counties and their underlying entities.[4] Indeed, Plaintiff has not raised concerns about receiving a fair trial in Chester County. Last, Plaintiff has not alleged that the inclusion of the forum selection clause in the Lease was obtained by fraud or overreaching.

---

[4] To the extent that Plaintiff's procedural due process claim in Count II invokes the Pennsylvania Sunshine Act, the Act provides that "[t]he Commonwealth Court shall have original jurisdiction of actions involving State agencies and the courts of common pleas shall have original jurisdiction of actions involving other agencies." 65 Pa. Cons. Stat. Ann. § 715 (West 1998).

For these reasons, the forum selection clause is enforceable and this Court will decline

jurisdiction. However, assuming *arguendo* that the inclusion of the forum selection clause does

not govern the disposition of this matter, dismissal is also required, because Plaintiff's

substantive and procedural due process claims – the only possible grounds for the district court's

subject matter jurisdiction – also fail.


### B.      Plaintiff Failed to State a Substantive Due Process Claim.

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive

any person of life, liberty, or property, without due process of law."   The clause "contains a

substantive component that bars arbitrary, wrongful government action regardless of the fairness

of the procedures used to implement them."  MFS, Inc. v. DiLazaro, 771 F. Supp. 2d 382,438

(quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).  As noted by the Third Circuit,

substantive due process "is an area of law famous for its controversy, and not known for its

simplicity."  DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995) (citation

and internal quotation marks omitted).

To state a substantive due process claim, a plaintiff must adequately plead that (1) the

property interest at issue is protected by the Fourteenth Amendment, and (2) the plaintiff was

deprived of that interest by behavior by a governmental official or entity which "shocks the

conscience."  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); United Artists Theatre Cir.,

Inc. v. Twp. of Warrington, 316 F.3d 392, 399-401 (3d Cir. 2003).  Plaintiff's substantive due

process claim fails on both prongs.

### 1.      Plaintiff Was Not Deprived of Any Property Interest that Is Protected by the Due Process Clause.

Plaintiff's substantive due process claim invokes two property interests: Plaintiff's ability to assign its leasehold to a third party and its ability to operate its business at the Airport. <u>See</u> Compl. ¶ 77. Defendants claim that these interests do not fall into those narrow categories which warrant substantive due process review. <u>See</u> Doc. 13 at 11. Because only certain "fundamental" property interests in contracts between state actors and private parties warrant Fourteenth Amendment protection and Plaintiff has not been deprived of any such interest, Plaintiff's substantive due process claim must be dismissed.

To plead a violation of substantive due process, a plaintiff must have been deprived of a particular quality of property interest. <u>See, e.g.</u>, <u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994). Only those property interests deemed "fundamental" are worthy of substantive due process protection under the Constitution. <u>See, e.g.</u>, <u>Indep. Enter., Inc., v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1179 (3d Cir. 1997). The Third Circuit has thoroughly addressed the question of whether an interest provided by a contract with a state entity rises to the level of a constitutionally protected property interest. <u>See</u> <u>Linan-Faye Const. Co. v. Housing Auth. of Camden</u>, 49 F.3d 915, 931-32 (3d Cir. 1995); <u>Unger v. Nat'l Residents Matching Program</u>, 928 F.2d 1392, 1397-1400 (3d Cir. 1991); <u>Reich v. Beharry</u>, 883 F.2d 239, 241-45 (3d Cir. 1989) (stating that "what constitutes a property interest in the procedural due process context may not constitute one in that of substantive due process"). While such contracts may give rise to an interest protected by the Fourteenth Amendment, the Supreme Court has never held that every state contract gives rise to a protectable property interest. <u>See Linan-Faye Const. Co.</u>, 49 F.3d at 931-32. Rather, state contracts only give rise to a property right protected under the Fourteenth Amendment in two limited instances: (1) "where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits or

permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social

security benefits"; or (2) "where the contract itself includes a provision that the state entity can

terminate the contract only for cause." Linan-Faye, 49 F.3d at 931-32 (quoting Unger, 928 F.2d

1392, 1399) (internal quotations omitted). An ordinary commercial contract falls into neither of

these categories. See Diamond Flite Ctr., Ltd. v. New Castle Cnty., No. 95-725, 1996 WL

308722 (D. Del. June 3, 1996) (quoting S & D Maintenance Co. v. Goldin, 844 F.2d 962, 967

(2d Cir.1988) (explaining that an interest in an ordinary commercial contract is "qualitatively

different" from the interests that the Supreme Court has recognized as property entitled to due

process protection).

The Lease in the instant case, which functions much like an ordinary contract between a

commercial landlord and tenant, falls into neither of the categories delineated by the Third

Circuit in Unger. First, Plaintiff does not allege any facts indicating a protected status, as might

be the case for individuals receiving public aid, and the Lease itself would not support such

allegations. Second, the Aviation Authority is not limited to terminating the Lease only for

cause. Indeed, Section 17.1 of the Lease provides that the Authority may cancel the Lease:

> [u]pon the occurrence of any event of Force Majeure, or other act or event
> beyond the control of Authority, or in the event of the assumption by the
> United States Government or any authorized agency thereof of the operation,
> control or use of the Airport facilities, or any substantial part thereof, in such
> a manner as to substantially restrict Operator from operating its business at
> the Airport for a period of ninety (90) days.

Doc. 13 at 48. This Court need not consider whether the Authority acted in accordance with

Section 17.1, because Plaintiff has not pleaded that the Authority has terminated its lease,

constructively or otherwise.

Where a plaintiff's leasehold interests have not been interrupted or terminated, "the

property interests of which plaintiffs have in fact been deprived or interfered with must involve

something less substantial" and therefore do not warrant protection under the Due Process Clause. Holt Cargo Sys. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 830 (E.D. Pa. 1998). Such is the case where the plaintiff's alleged injuries are rooted in "loss of customers; lost profits; loss of a bid; [or] breach of a lease." Id. While Plaintiff complains that its entire leasehold interest at G.O. Carlson Airport has been "decimated" by the Authority's acts, a close examination of Plaintiff's complaint reveals that Plaintiff's leasehold has not been "interrupted or terminated" by Defendants. See Doc. No. 15 at 16. Plaintiff does not allege that its lease has been terminated, that it has been removed from the Airport, or that it has been barred from providing certain FBO services at the Airport. Indeed, if Plaintiff does have a property interest that has been "deprived or interfered with" by Defendants, it is "something less substantial" than a property interest that warrants substantive due process protection.

The facts underlying Plaintiff's substantive due process claim include allegations that the Aviation Authority breached a covenant under the Lease by unreasonably withholding consent to potential assignments, allowing a competing fuel supplier to operate at the Airport, and refusing to participate in a joint marketing campaign with Plaintiff. Plaintiff urges this Court to consider these activities in tandem as evidence of a plan by the Aviation Authority to drive Plaintiff out of its leasehold and "take over the FBO operation at the Airport at a dramatically reduced, commercially unreasonable price." Compl. at ¶ 78. The facts that Plaintiff alleges do not constitute a deprivation of any property interest that warrants substantive due process protection.

To begin, the "mere breach of a contract by a government or a government instrumentality does not give rise to a constitutional right." Ne. Jet Ctr. V. Lehigh-Northampton Airport Auth., 767 F. Supp. 672, 676 (E.D. Pa. 1991) (citing Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981)). If it did, "virtually every controversy involving an alleged breach of a contract by a

government or a governmental institution or agency or instrumentality would be a constitutional case." Jimenez, 650 F.2d at 370. Plaintiff's right to assign its interests at the Airport to a third party, with the Authority's consent, is a contract right, granted by the Lease between Plaintiff and the Aviation Authority. It is not a "fundamental" right guaranteed by the Constitution that warrants substantive due process protection. See Charles v. Baesler, 910 F.3d 1349, 1353 (6th Cir. 1990) ("The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process 'affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting Michael H. v. Gerald D., 491 U.S. 110 (1989) (citation and internal quotation marks omitted)). Indeed, even if the Authority deprived Plaintiff of a property right by unreasonably withholding consent to one or more proposed assignments, such a right is not protected by the Due Process Clause of the Fourteenth Amendment.

Plaintiff's remaining allegations also fail to allege a deprivation of a right protected by substantive due process. First, Plaintiff contends that as part of the Aviation Authority's plan to drive Plaintiff out of business it allowed Global Air, one of Plaintiff's competitors, to operate at the Airport at an unfair advantage, because Global Air is a "SASO" that has "reduced costs and overhead, as well as the different minimum standards that govern its operations." Compl. ¶ 37. Plaintiffs do not have "a [constitutional] right to be free from governmental action designed to encourage other private development" in the marketplace. Holt Cargo Sys., Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 836 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999). Accordingly, consistent with the terms of the Lease, the Authority may award fuel service business to Global Air without violating the Due Process Clause. This Court also notes that

Global Air had been providing fuel services at the Airport years prior to the execution of the Lease in this matter, so Plaintiff was likely aware it would be facing such competition at the time of entering the Lease.

Plaintiff also complains that the Aviation Authority declined to engage in a joint marketing campaign to try to increase business at the Airport. Here, again, Plaintiff fails to allege a deprivation of fundamental property interest. Plaintiffs have no fundamental property interest "in obtaining optimal results from their businesses." Holt Cargo Sys., 20 F. Supp 2d at 831 (citing Norfolk Fed. of Bus. Dists. v. Dep't of Hous. & Urban Dev., 932 F.Supp. 730, 738 (E.D. Va.), aff'd, 103 F.3d 119 (4th Cir. 1996)). Similarly, "the interest in obtaining a maximum return on investment is not a 'fundamental' right." Holt Cargo Sys., 20 F. Supp. 2d at 831 (citing Nat'l Paint & Coatings Ass'n. v. City of Chicago, 45 F.3d 1124, 1130 (7th Cir.), cert. denied, 515 U.S. 1143 (1995)). The government is under no obligation to help Plaintiff grow its business, so the Authority's refusal to participate in the campaign is not a property interest protected by the Due Process Clause.

None of the property interests that Plaintiff alleges has been infringed upon by the Aviation Authority warrants substantive due process protection. Therefore, regardless of whether Plaintiff can adequately plead actual deprivation of any of these interests, its substantive due process claim must fail.

**2.      Defendants' Activities Do Not "Shock the Conscience".**

Even if Plaintiff could show it has been deprived of a property right protected by the Due Process Clause, it must then also adequately plead that Defendants engaged in conduct that "shocks the conscience." See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); United Artists Theatre Cir., 316 F.3d at 399-400. Only "the most egregious official conduct" will

meet this standard. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) (citations and internal quotation marks omitted). Importantly, government actions that are merely taken for an "improper purpose" or in "bad faith" do not reach the threshold level of egregiousness. Johnston v. Dauphin Borough, No. 05-CV-1518, 2006 WL 1410766 (M.D. Pa. May 22, 2006) (citing United Artists Theatre Cir., 316 F.3d at 400-02).

"The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999). Allegations of self-dealing and corruption may shock the conscience, but a plaintiff "must set forth facts that raise the allegations beyond the realm of mere improper motives." Potter v. City of Chester, No. 12-2058, 2012 WL 5464970, at *5 (E.D. Pa. Nov. 9, 2012) (citing Locust Valley Golf Club, Inc. v. Upper Saucon Twp., 391 Fed. App'x 195 (3d Cir. 2010)). "Unless the evidence indicates that the challenged decision is completely unrelated in any way to a rational [governmental] goal, there is no violation of substantive due process." Corneal v. Jackson Twp., Huntingdon Cnty., Pa., 313 F. Supp. 2d 457, 466 (M.D. Pa. 2003) (emphasis added), aff'd sub nom. Corneal v. Jackson Twp., 94 F. App'x 76 (3d Cir. 2004). In other words, where the government entity may point to some rational goal of its conduct, there is no due process violation. Id.

This Court will consider separately each of the three alleged actions by Defendant Aviation Authority raised as part of Plaintiff's substantive due process claim.

First, Plaintiff asserts that the Aviation Authority breached the terms of the Lease by unreasonably withholding consent to two potential assignments. Compl. at ¶ 56. Plaintiff generally complains that these actions were "motivated by bias, bad faith, or partisan or personal motives unrelated to the merits," but Plaintiff does not details to support the possibility of

misconduct. Id. As a preliminary matter, it appears from the Complaint that the first proposed assignee, Galaxy, withdrew its offer to purchase Plaintiff's business on its own volition; the Authority did not raise the requirement of corporate or personal guarantees with Galaxy or formally deny the proposed assignment. Id. at ¶ 50. Therefore, this Court will not consider the Authority's actions in connection with the Galaxy proposal.

As to the second proposed assignment to APP, while the requirement of a personal and corporate guarantee might narrow the field of potential assignees, this requirement is not completely unrelated to any rational goal. It was rational for the Aviation Authority, as a municipal organization with a fiduciary responsibility to the County's taxpayers, to choose to require a personal guarantee to protect against default by an assignee. This condition is even more understandable when considering the financial difficulties of its current FBO. The Aviation Authority had recently amended the Lease to account for a $13,760 loan from it to Plaintiff, adjust Plaintiff's rental obligations for a six-month period, and postpone some of Plaintiff's maintenance obligations. Compl. at ¶ 32. Accordingly, the Authority's requirement that an assignee provide a personal guarantee cannot be said to be completely unrelated to the valid government objective of protecting public funds.

The Authority's preference to end the leasehold at the Airport and directly operate the Airport itself can also be linked to the rational goal of protecting public funds. Plaintiff relies on a January 10, 2012 email from the Aviation Authority to one potential assignee as a "telltale" sign that the Aviation Authority has not only set an unreasonable requirement of a personal guarantee, but also believes that it could be in a better financial position if it took over the FBO services itself. Id. at ¶ 57. But Plaintiff does not offer any specific facts that could plausibly lead to the conclusion that Defendants' activities were the result of corruption or motivated by self-dealing.

The fact that defendants would not personally benefit weighs against the plausibility of the claim that defendants engaged in the kind of corruptive or self-dealing behavior that "shocks the conscious." See, e.g., Potter v. City of Chester, No. 12-2058, 2012 WL 5464970 at *6 (E.D. Pa. Nov. 9, 2012) ("Even accepting as true that Defendants' purpose of driving Plaintiff out of business was to benefit an unnamed pizzeria, there are no factual averments that Defendants would have profited or benefitted personally. Such does not rise to a level of self-dealing that shocks the conscience, but rather, at most, such allegations point to an improper motive."). As Defendants point out, Plaintiff does not allege that Chairman Koenig or any of the other board members would personally profit from taking over FBO operations at the Airport: "Logically, if the Authority did 'take over' operations at the Airport, all income or revenue derived from such operations are paid to the principal: Chester County and its taxpayers." Doc. No. 22 at 9. The Complaint does not state otherwise.

The Authority's interest in taking over FBO operations at the Airport may be in line with its duty to the County taxpayers to operate the Airport in a cost-effective manner and ensure continuous, quality service to aircraft carriers, especially given the difficulties it recently experienced due to Plaintiff's financial condition. Moreover, since Plaintiff had not been meeting many of its obligations under the Lease, the Authority could have chosen to pursue termination based on Plaintiff's breach. That the Authority instead offered to buy out Plaintiff might be seen as a courtesy to Plaintiff and an effort to compensate Plaintiff for the then-current value of its leasehold interests.

Likewise, Plaintiff's other factual allegations also fail to show egregious conduct on the part of the Authority. Plaintiff alleges that as part of its scheme to drive Plaintiff out of its leasehold, the Aviation Authority allowed one of Plaintiff's competitors to provide fuel services

at the airport at a competitive advantage and refused to participate in a joint-marketing plan. Neither of these allegations shows any behavior that "shocks the conscience." With respect to the fuel services, the Lease permits the Authority to invite other providers to operate at the Airport. Lease at § 4.2. ("This covenant not to compete by Authority shall not be construed to grant Operator an exclusive right and privilege to engage in business free from competition with other fixed base operators at the Airport."). Global Air had been providing fuel services at the Airport for years prior to the execution of the Lease in this matter. Plaintiff was likely well aware at the time it entered the Lease that it would be competing with Global Air in fuel sales. Lastly, the Authority's encouragement of competition at the Airport is arguably related to the rational goal of providing lower prices and better service to airport patrons.

The Authority's refusal to participate in a joint-marketing plan also does not show "conscious-shocking behavior." Plaintiff offers no factual basis to conclude that the Aviation Authority's choice was anything other than a business decision. Indeed, because the Authority receives rental payments based on a percentage of the revenue Plaintiff brings in to the Airport, it would also be in the Authority's best interest to participate in the marketing plan if the boardmembers believed the campaign would be successful. However, the Authority might have reasonably concluded that retaining an outside consulting company would not be a profitable venture for the Airport.

Because Plaintiff fails to plead specific facts that could lead to a conclusion that Defendants engaged in conscious-shocking behavior, Plaintiff's substantive due process claim must fail.

### B.      Plaintiff Failed to State a Procedural Due Process Claim

In Count II of the Complaint, Plaintiff asserts that by making decisions that affect Plaintiff's leasehold interest during closed executive sessions instead of public meetings, the Aviation Authority deprived Plaintiff of its right to be heard under the Fourteenth Amendment of the U.S. Constitution and violated the Pennsylvania Sunshine Act,[5] thereby violating Plaintiff's constitutional right to procedural due process. With this claim, too, Plaintiff fails to make out a cause of action that can survive a motion to dismiss.

A procedural due process claim poses two issues: (1) Whether the plaintiff has a property interest that triggers the protection of procedural due process, and (2) if so, whether the "process due" requires a predeprivation hearing. See Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989).

State contract law can create a property interest protected by the Constitution's guarantee of procedural due process. Id. However, not every contract right is protected. Id. Indeed, "if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities." Id.

As explained supra in this Court's discussion of Plaintiff's substantive due process claim, the Third Circuit has recognized only two general types of contract interests that are recognized as property interests protected by procedural due process: (1) where the contract confers a protected status; or (2) where the contract itself includes a provision that the state entity can terminate the contract only for cause. See Linan-Faye Constr. Co., 49 F.3d at 932 (internal quotation marks and citation omitted). As to the second category of interests, the Third Circuit's pronouncement does not "stand for the proposition that if a contract can be terminated only for

_____

[5] 65 Pa.Con.Stat. Ann. § 701 (1998).

cause, then every contract dispute that may arise states a federal claim under Section 1983."

Chenvert v. DeJohn, No. 98-111, 2000 WL 1728257, at *4 (D. Del. April 11, 2000).

As this Court determined in our analysis of the Plaintiff's substantive due process claim, the property interests of which Plaintiff complains it was deprived fall into neither of these categories. Plaintiff does not allege that the Lease conferred a protected status upon it or that the Lease can only be terminated for cause. Even if the Aviation Authority could only terminate the Lease for cause, Plaintiff would still fail to state a claim for violation of its right to procedural due process, because Lease here has not been terminated. Accordingly, Plaintiff has not been deprived of any protected property interest. Plaintiff's leasehold interests remain in effect, and Plaintiff's FBO services at the Airport have not been discontinued by the Authority. Therefore, Plaintiff has no grounds for requesting a pre-deprivation hearing.

Given that Plaintiff does not allege deprivation of an interest that triggers procedural due process protections, the Court will not analyze if Plaintiff was owed additonal procedures by the Aviation Authority.

## VI.    CONCLUSION

For the foregoing reasons, Counts I and II of Plaintiff's Complaint fail to state a federal cause of action and are dismissed with prejudice. Because Plaintiff's federal causes of action have been dismissed, this court does not have jurisdiction over this case under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and will decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claims in Counts III and IV regarding breach of contract and tortious interference with a contract under 28 U.S.C. §1391(b).

An implementing order follows.